and Mr. Davis? Davis. Yes, Your Honor. Please proceed. Thank you, Your Honor. May it please the Court, I'm Lee Davis and I am here today on behalf of the appellant Brian Rashad Hill. As the Court knows, this was a trial, a fairly lengthy one. In fact, it was the second trial. The first one ended in a hung jury and a mistrial. So this is the appeal of the second trial. And actually, the evidence of guilt in this case was fairly clear. It was a mistrial. So my four arguments on appeal focus on sentence-related issues. I believe the strongest of my four issues here on appeal is actually what I put in the brief as argument number four with regard to the jury verdict. As the Court knows, Supreme Court cases Apprendi and Aileen and their progeny require a jury finding to justify higher mandatory minimums or statutory maximums. And in this case, the problem was in the verdict form. For admittedly probably typographical reasons, just nobody caught it, the important question was left out of the verdict form. The verdict asked the questions, did you find a conspiracy involving the cocaine or the heroin? Then it asked a question, did you find that the overall scope of the conspiracy involved 280 grams or more of cocaine? But the verdict form failed to include the final necessary question, was that something involving Mr. Hill? Was Mr. Hill involved in that? Did he know that there were 280 grams or more of the cocaine? Now, that is an essential question for the district court to be able to impose more than a zero to twenty year sentence in this case. And unfortunately on this count, the district court imposed a forty year or four hundred and eighty month sentence. Count, and I'm sure I'm going to flip them, I believe count three is a substantive heroin count. And the district court did sentence to twenty years there, forty years on this conspiracy and ran them concurrently. The challenge here though is that because the jury never answered that question about Mr. Hill specifically and 280 grams or more of cocaine, the district court could not have And so that creates the problem now of what do we do? Unfortunately, there was no objection in the trial court. So we're grappling with that fourth prong of plain error review. Clearly there was error. When you read the record, it's pretty obvious and certainly it affected his substantial rights because he's now serving, you know, a sentence that's twice as long as he could have with that verdict. But the question is though, does this affect the fairness, integrity and public reputation of these proceedings? And I think that we can safely say that it does because we have imposed now on this man a sentence that is literally double that which could otherwise have been imposed with this verdict. Well, I hear what you're saying. However, if we reduce the fourth prong of plain error review to that, that seems to duplicate the other prongs of plain error review, right? Don't we need some extra ingredient in order to meet the fourth prong? I mean, the fourth prong seems to be talking about something broader than, well, you know, he's got a longer sentence. Well, yeah, that's under the first two prongs. Yes. So what should we look to? Well, simply the gravity of the error. The gravity of the error is so large. Not the gravity of the record against your client. I mean, in other words, the jury didn't answer a specific question on the jury form. The jury was instructed about all the elements, was instructed about the level of cocaine that had to be at play, that he had to know about it, and the jury comes back and says guilty, and the indictment charged it as well, but it seems to me there's just reams of evidence that he knew this was a substantial conspiracy, well above 280 grams. So wouldn't we consider the totality of what was adduced and discussed at trial? Well, the government's brief would, you know, the government devotes a couple of pages plus of their brief seemingly essentially asking this court to make this jury find it here for that very reason, because there is a lot of evidence in this case about the scope both in terms of time and quantity of the narcotics being distributed here, but the problem is it's a jury question, and we have to have that answer from the jury, and when you look at, for example, sufficiency of the evidence review, the court— But if our question is whether this result seriously affects the fairness, integrity, or public reputation of judicial proceedings, that strikes me as a different question. It's not, I mean, maybe sufficiency of the evidence is tied into that, but where the evidence is plainly sufficient, and the jury just didn't answer the question, I'm not saying it's an unserious problem or issue if there's an error here. It would be a serious error, but we're looking at problem four, a plain error review, which strikes me as different than just straight up saying, well, is there sufficiency of the evidence, and we have to let the jury say that. Certainly, but, I mean, this is now an illegal sentence because he's been subject to a range of punishment not provided for by law, and, of course, we have the gravity of the error. This is different than perhaps we're arguing over a two-level sentencing guidelines issue where a couple of levels typically in the guidelines just takes you from the top of one range to the bottom of the other, perhaps, and so in that kind of situation, you would see someone—okay, maybe that was error, but they're sentenced well within the statutory range of punishment for an offense, and, of course, if you're talking about a factual dispute, then that's a clear error review with respect to what the district judge found. Here we're talking about something that is just beyond the bounds of the law authorized by this jury verdict, and that's . . . What was the substance of the argument, maybe, I don't know if you were trial counsel or not. I was not, sir. You were not. So what was the subject of defense counsel's argument that Mr. Hill did not, in fact, know that the conspiracy involved more than 280 grams of cocaine, if that's the right figure? I honestly can't tell you off the top of my head what was argued in the trial court on that specific point. Was there an argument that he didn't know there was more than 280 grams of cocaine? Knowing who the trial lawyers were, I fully expect that there was. Well, I mean, there's a record. And I just, unfortunately, I can't answer that question. Okay. I'm happy to get back to the court with a . . . Maybe on rebuttal. The . . . part of the aspect, too, with respect to what he could have known, though, is that his role, Mr. Hill's role, was small-time dealer and kind of enforcer to keep order there at the Han Gill Hotel. So presumably, he had some knowledge of other goings-on here and there, but we don't really, we can't say for sure what he really did know. Well, he was an enforcer. He was a bagger. He was monitoring some of the other trap rooms. I mean, some of that flows into the drug quantity calculation as well, which I know you're contesting, but it strikes me that what the court did was take the conservative approach and sort of gave him every benefit of the doubt. It was still a very substantial amount of drugs that he knew about. And that may be the case, Your Honor, but the challenge with respect to the drug quantity in the PSR is we have virtually nothing in the PSR that we can say, oh, that's how that number was calculated. When we look at that drug quantity calculation, it's extolled as a conservative estimate, but we don't know where it came from. It's billed as consistent with the other defendants, which may or may not be appropriate. That kind of flies in the face of the concept of individualized sentencing. If he legitimately should have been held accountable for the same quantity as these other folks, then that's fine, but we need to know where that number came from and why that's a legit number for Mr. Hill, and that's where those numbers there break down. Aren't those numbers also consistent with some of the testimony at trial, though? Wasn't there testimony at trial that 600 to 800 grams of cocaine base were sold a month and that 600 grams to a kilogram of heroin were sold per month? By the witness who testified, I believe that she worked two to three shifts each week over the month. I think wouldn't that mean, at least by my calculations, that a trap room overall would sell more than a kilogram of each drug, both cocaine, powder cocaine and cocaine base, in a month? Wasn't there testimony like that at trial? Yes, sir. There was a good bit of testimony about that at trial in terms of different people talking about different activities that they participated in and or saw, but the problem that we have here is nobody took that and said, okay, well, this looks like good information and we're going to extrapolate that. I literally look at the PSR and say, I have no idea where this came from. Was it person A, person B, person C talking about that? How did they determine, perhaps more importantly, that that specific conduct was then reasonably foreseeable to Mr. Hill if he did not participate in it? Well, the district judge had presided over both the first and second trial, of course, and conducted an extensive, thorough sentencing hearing. Are you saying it has to be in the PSR? Well, the PSR is supposed to do that. I mean, if you read Rule 32 and if you look at Section 3553A, a properly calculated sentencing guidelines range is the basis for federal sentencing. I mean, that only begins that process. The interesting thing, and perhaps it was an oversight, but in the government's motion for upward departure, the government did spend about a page of a, I think, fourteen or fifteen page motion talking about some of the things that the court just noted, that there were some people who testified at trial. But that didn't get into the reasonable foreseeability issue, what the government put in that motion, nor did the probation officer include that in the PSR. And the PSR, the probation officer did generate a second addendum to the PSR after the government filed this motion for upward departure and combined response to objections. So obviously, the record doesn't tell us why the probation officer didn't treat that, but we know that the probation officer is charged with only including reliable information in that, you know, basis, a legitimate basis, a facial basis that we can look at and say, okay, I may not agree with it, but at least it makes some sense. And so, that's the challenge there. And so, maybe, you know, this could be a situation where if this court sends this case back, Mr. Hill may really regret going back because the drug quantity, when someone sharpens the pencil, as my CPA father says, gets a whole lot bigger. But he's not going to turn out a whole lot worse at re-sentencing. So that's where we're asking this court to say, hey, let's just do this right. Let's adhere to the standards and the procedures that we have to follow for federal sentencing. Now, admittedly, this, and you can see some of this in the PSR and some of it is in the trial testimony, this is a difficult situation to be able to get that accurate estimate or extrapolation because the nature of the setup was such that law enforcement did have a very difficult time getting in there. And so, there was not a lot of information that you see in a lot of cases where we can say for certain, person X was dealing Y amount of a quantity over a certain period of time. So, it's naturally going to be a more challenging case, but just because it's harder doesn't mean it doesn't have to be done. And I think with 14 seconds left, that's probably a good point for me to stop unless the court had a question. Thank you, counsel. You'll have time for rebuttal. Thank you, sir. Ms. Mitchell. Good afternoon. May it please the court, Amy Mitchell for the United States. I want to start in the same place that Mr. Davis did, and that is with the fourth issue. There is no clear or obvious error here. Hill argues that in order to be subject to an increased statutory maximum, the jury had to make an individualized drug quantity determination. That's contrary to this court's case law, and it ignores the jury's findings. This court's post-Apprendi and post-Alene precedent holds that in the context of a statutory maximum, the government does not need to prove or have the jury find an individualized drug quantity. The jury's finding as to the conspiracy as a whole is sufficient. Here the jury found, by special question, that the conspiracy involved 280 grams or more of cocaine base. And based on that alone, Mr. Hill cannot show error. Doesn't the jury also have to show knowledge on Hill's part that the conspiracy encompassed that? I mean, his part of it, not his role necessarily, but doesn't the jury have to make a finding about the knowledge? The jury did make that finding here. Where is it? It's in the fifth element of the jury instructions. So it's in the instructions, but you've got a problem with the fifth element in that it has an or in there, not an and. In other words, I've been trying to square this circle and add up how the jury instructions, the evidence at trial, and the jury verdict form, the interrogatory form, can get us there. But you're saying we don't have to get there. Correct. I'm saying you don't have to get there. And we just go by what the instructions gave the jury and we have an implicit finding that he knew? No, I think it's sufficient that there is a finding as to the conspiracy as a whole. I mean, Turner is still good law. More recently, Aikens, Gonzalez. This court's case law treats the minimum sentence differently than the maximum sentence. But to answer your question, the jury found both a quantity of heroin and 280 grams of crack cocaine as to the conspiracy as a whole. It follows that they would have found that fifth element as well because it is . . . So you're saying that even though the fifth element said or, the jury came back with an and, so therefore it must have been?  Yes. Because it follows . . . What's your best case that supports that? It follows that because they found one and the fifth element is required, they found that as well. What's your best case that supports that? I don't have one off the top of my head. I can tell you, I'll reiterate that that finding isn't required to increase the statutory maximum. I mean, I have here in front of me a case of ours called Montemayor. Are you familiar with that case? Yes. Okay. And I'm quoting, a jury must, quote, determine the drug amount which each defendant knew or should have known was involved in the conspiracy. Yes. And you're saying the jury found that he knew there was more than 280 grams of cocaine base? By convicting him based on these jury instructions, yes. Okay. Well, I guess I'm just re-plowing the ground that Judge Wilson just plowed. All right. Well, let's assume we disagree with you. I'm sorry. I didn't understand. Let's assume we disagree with you. Okay. Do you lose? There is no effect on his substantial rights. Well, wait a second. Didn't Mr. Davis was saying that he was looking at 480 instead of double the sentence, right? That's not substantial? He would still have, there would still be two counts here that would, could add up to 40 years in prison.      And the record says . . . And the record says . . . And the record says . . . And the record says . . . Can we? I mean, that's the crux of your argument. Well, it would have been 480 regardless. It's very clear from this record that the court was going to impose a very significant sentence here. All right. Great. But that doesn't mean that, well, if the court had known that the statutory maximum was 240, the court would have just added 240 plus 240 as opposed to 480 including 240.    . town . ... town